UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DUSTIN J. HESS,

                    Plaintiff,              Civil Action No. 16-14314
                                            Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                    Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT [25], GRANTING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [18], AND
REMANDING THE CASE TO THE ALJ FOR FURTHER PROCEEDINGS**

**I.    Background**

Plaintiff Dustin J. Hess ("Hess") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions. (Docs. #18, #25). On March 6, 2017, an order was entered approving the parties' consent to the undersigned's authority to conduct all proceedings and enter a final judgment in this matter. (Doc. #16). A hearing was held on March 8, 2018, where the parties' respective counsel appeared by telephone.

Administrative Law Judge Stephen Marchioro ("ALJ") found that Hess suffers from the following severe impairments: multiple sclerosis ("MS"), degenerative disc disease, fibromyalgia, and obesity. (Tr. 70). Hess' principal argument centers around the ALJ's handling of an April 7, 2014 opinion authored by Zubair Shaikh, M.D., which imposed limitations on Hess' ability to perform work on an ongoing, sustained basis more restrictive than those

determined by the ALJ. The ALJ considered Dr. Shaikh to be a "treating physician," and gave his opinion "some weight," though he ultimately imposed an RFC that was less restrictive than that suggested by Dr. Shaikh's opinion. (Tr. 77). Hess argues that the ALJ should have given the opinion controlling weight. The Commissioner counters that Dr. Shaikh was not a treating physician, and that even if he was, the ALJ properly evaluated his opinion under the "treating physician" rule. For the reasons stated on the record, and those explained below, the Court finds that remand is appropriate as to this issue.

## II.    **Applicable Legal Standards**

Under the Act, SSI benefits are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past

> relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or the court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("[I]f substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'").

## III. <u>**Analysis**</u>

The ALJ limited Hess to sedentary work, except Hess needs the ability to alternate between sitting and standing. (Tr. 73). He can sit for 20 minutes and then stand for 20 minutes while remaining at the workstation. (*Id.*). He can operate foot controls with the bilateral lower extremity only occasionally. (*Id.*). He cannot climb ladders, ropes, or scaffolds, but he can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. (*Id.*). He is limited to jobs that can be performed using a hand-held assistive device at all times when

4

standing. (*Id.*). He must avoid all exposure to extreme cold, extreme heat, excessive vibration, use of moving mechanical parts, and unprotected heights. (*Id.*). He cannot have prolonged exposure to sunlight. (*Id.*). A significant component of the ALJ's RFC determination (and ultimate decision in this case) was his decision to give only "some weight" to Dr. Shaikh's opinion.

The ALJ considered Dr. Shaikh to be one of Hess' "treating physicians," and the record supports this. (Tr. 387, 392, 426, 484, 541, 549, 597, 1550, 1578, 1609, 1638, 1647, 1649). "Generally, the opinions of treating physicians are given substantial, if not controlling, deference," but they "are only given such deference when supported by objective medical evidence." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citing *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984) and 20 C.F.R. § 404.1527(d)(2)). Thus, an ALJ "'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley*, 581 F.3d at 406 (internal quotations omitted); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996). However, it is "error to give [a treating source] opinion controlling weight simply because it is the opinion of a treating source" unless it is well-supported and consistent with the record as a whole. SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996). Accordingly, "the Sixth Circuit has held that '[a]n [ALJ] may give more weight to the opinions of examining or consultative sources where the treating physician's opinion is not well-supported by the objective medical records.'" *Kilkolski v. Comm'r of Soc. Sec.*, No. 14-cv-14700, 2016 WL 6080217, at *9 (quoting *Dyer v. Soc. Sec. Admin.*, 568 F. App'x 422, 428 (6th Cir. 2014)), *report and recommendation adopted*, 2016 WL 1357900, at *6 (E.D. Mich. Apr. 5, 2016).

If the ALJ declines to give a treating physician's opinion controlling weight, he must document how much weight he gives it, considering a number of factors, including the "length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(c)(2) (establishing that the ALJ must "give good reasons" for the weight given to a treating source opinion)). "Although the regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include 'good reasons . . . for the weight . . . give[n] [to the] treating source's opinion' – not an exhaustive factor-by-factor analysis." *Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, 804 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(d)(2)). Ultimately, "[t]his procedural 'good reason' rule serves both to ensure adequacy of review and to permit the claimant to understand the disposition of his case." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550-51 (6th Cir. 2010) (citing *Rogers*, 486 F.3d at 242).

Here, the ALJ explained that he was not giving Dr. Shaikh's opinion "controlling weight" for three reasons: (1) his belief that Dr. Shaikh "seems to indicate these [more restrictive] limitations apply when [Hess] is having an acute exacerbation, and [Hess] testified his last one was six months prior to the hearing"; (2) Dr. Shaikh's opinion "is not consistent with [Hess'] treatment records, which show [his] baseline has not been as limited as the doctor indicated;" and (3) Dr. Shaikh's opinion "is not consistent with [Hess'] daily activities." (Tr. 77). The Court finds that at least with respect to the first two of these reasons, the ALJ's analysis is not supported by substantial evidence.

First, the ALJ's finding that Dr. Shaikh intended the limitations he imposed to apply only

when Hess "is having an acute exacerbation" of his symptoms is not supported by substantial evidence. As Hess argues, Dr. Shaikh distinguished between limitations that would apply "daily," or in general, and those that would be likely to exist during an "acute exacerbation," and many of the "daily" ones, such as lifting, bending, and twisting, exceeded the limitations imposed by the ALJ (Tr. 482). And, importantly, Dr. Shaikh noted that MS is, in general, "a progressive disease characterized by acute relapsing and remitting exacerbations." (*Id.*). This latter point dovetails with the Court's analysis of the second reason the ALJ gave for discounting Dr. Shaikh's opinion – that it was "not consistent with [Hess'] treatment records which show [his] baseline has not been as limited as the doctor indicated."

Hess argues that support for Dr. Shaikh's daily limitations of lifting no more than five pounds and no more than occasional bending or twisting exists in "treatment notes indicating tremors in his arms, lower back pain unsuccessfully treated with opioid / narcotics and palliative injective therapies, lower leg weakness, [and] lower leg pain upon range of motion and walking . . . ." He also points out that records "indicate that [he] experienced at least two MS exacerbations during the relevant period, which would support Dr. Shaikh's increased limitations during those periods, of which the ALJ offers no analysis." In her response, the Commissioner focuses entirely on the evidence regarding Hess' strength, and concludes that "[t]he ALJ noted these findings, and reasonably found them inconsistent with Dr. Shaikh's opinion that [Hess] could barely lift 5 pounds outside of . . . periods [of exacerbation]." But the Commissioner does not address the remaining limitations in Dr. Shaikh's opinion and how the medical evidence is inconsistent with them.

At any rate, the record contains a plethora of evidence not meaningfully discussed by the ALJ in relation to Dr. Shaikh's opinion, which at least arguably stands at odds with the ALJ's conclusion that the doctor's opinion is inconsistent with Hess' treatment records:

- The record contains consistent reports of muscle weakness, and findings of reduced strength due to Hess' MS. (Tr. 361, 366, 374, 388, 476, 539-40, 605, 950-52).

- On September 17, 2013, Hess presented to Dr. Shaikh with relapsing-remitting MS, weakness in his entire body, and severe back pain. (Tr. 392-93). Hess reported that pain exacerbations occurred daily, complained of muscle pain, muscle weakness, dizziness, and headaches, and indicated that many of his symptoms were worsening.

- On October 22, 2013, Hess presented in "acute distress," with pain on palpation of his lower back. (Tr. 389). On December 23, 2013, Hess reported a worsening of his vision, and was also seen for his relapsing-remitting MS, whose symptoms included paresthesias, limb weakness, limb spasticity, and ataxia. (*Id.*). These symptoms occurred constantly, were moderate in severity, and were worsening. (*Id.*). Upon physical examination, Hess was in acute distress due to lower back pain, had a doubled up and stooped posture because of pain, and had a slow and cautious gait (antalgic, altered, guarded). (Tr. 561).

- In 2013 and 2014, Dr. Shaikh prescribed Hess multiple Solumedrol infusions for a diagnosis of either an "MS Acute Exacerbation" or an "MS Exacerbation." (Tr. 426, 484, 1331). Into 2014, Hess was still experiencing vision changes, and was having problems with coordination, with worsening symptoms. (Tr. 555).

- On multiple subsequent visits, Hess was found to be in acute distress and doubled over due to back pain, or to be experiencing an acute exacerbation. (*E.g.*, Tr. 541, 550-51, 557). He was also found to have vision issues, be dizzy, and have balance problems and muscle weakness as a result of his condition. (Tr. 542, 549-50, 597, 1647, 1649). On September 15, 2014, Hess' lower back pain was "[s]ignificant enough to go to the ER." (Tr. 537). On December 9, 2014, Hess' lower back pain was "more significant" and "worsening." (Tr. 528). Hess reported multiple falls. (Tr. 524, 602, 603).

- Treatment records by other providers also appear at least arguably consistent with Dr. Shaikh's opinion. For instance, on October 29, 2013, Hess went to the Pain Management Network with bilateral low back pain that was interfering with his activities of daily living. (Tr. 407). He described the pain as intermittent severe burning, aching, sharp, stabbing, and cramping, with a pain score of 7-10/10. (*Id.*). Activity increased this pain, as did sitting. (*Id.*). Physical exam revealed

8

generalized weakness in Hess' lower extremities, and he was using a cane to ambulate. Hess was scheduled for bilateral lumbar facet joint injections and bilateral dorsal sacral nerve root blocks (sacral transforaminal epidural steroid injections). On November 5, 2013, Hess received bilateral lumbar facet blocks. (Tr. 453-54, 1276-77, 1299-1300). Records indicate that his chronic low back pain had exacerbated, and was deemed "severe." (Tr. 453). He was discharged home in a wheelchair. (Tr. 1300). Later than month, upon examination, Hess' musculoskeletal system was marked as abnormal. (Tr. 413). Upon examination, a doctor found that Hess' pattern of pain was along the bilateral S1, S2, and S3 dermatomes, and a dorsal sacral nerve root block (sacral transforaminal injection) was administered. (Tr. 455-56).

- On February 14, 2014, consultative examiner Thuy Nguyen, D.O., wrote that Hess' MS causes transient blindness, chronic pain, and occasional weakness in his bilateral lower extremities. (Tr. 475, 478). Results from a physical examination indicate that Hess walked with an antalgic gait and used a cane. (Tr. 476). He was not able to walk heel-to-toe in tandem and needed help with squatting. (*Id.*). While Dr. Nguyen found that Hess had full range of motion and could lift and carry up to ten pounds, he concluded that Hess could only walk less than half a block. (Tr. 478).

- Due to his MS and symptoms such as low back pain, neck pain, ataxia, the following studies were performed:

    o X-ray of lumbar spine on September 15, 2013: indicated L5-S1 degenerative disc disease with possible neural foraminal narrowing. (Tr. 351).

    o MRI of lumbar spine on September 26, 2013: indicated underlying degenerative disc disease, a broad-based posterior disc protrusion at L5-S1, and moderate right-sided neural foraminal narrowing. (Tr. 352).

    o MRI of cervical spine on April 7, 2014: indicated minor multilevel disc disease, which is most pronounced at C3-4. (Tr. 514).

    o CT of lumbar spine on September 9, 2014: indicated multilevel degenerative disc disease changes in the lumbar spine, especially at L5-S1, L4-5, and L2-3. (Tr. 511). "These findings appear slightly more prominent since previous MRI study taking the difference in technique into consideration." (*Id.*).

While the ALJ mentioned these records (Tr. 75), he did not explain why they are inconsistent with Dr. Shaikh's opinion.

On remand, the ALJ should thoroughly review and discuss the foregoing evidence as it relates to Dr. Shaikh's opinion, and, more fundamentally, to Hess' ability to perform, on an ongoing, 40-hour-per-week basis, whatever RFC the ALJ ultimately adopts.

## IV. Conclusion

For the foregoing reasons, and those set forth on the record, the Court **DENIES** the Commissioner's motion for summary judgment **(Doc. #25)**; **GRANTS IN PART** Hess' motion for summary judgment **(Doc. #18)** to the extent it seeks remand and **DENIES IN PART** that motion to the extent it seeks an award of benefits; and, pursuant to sentence four of 42 U.S.C. § 405(g), **REMANDS** this case to the ALJ for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Dated: March 8, 2018  
Ann Arbor, Michigan

s/David R. Grand  
DAVID R. GRAND  
United States Magistrate Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 8, 2018.

s/Eddrey O. Butts  
EDDREY O. BUTTS  
Case Manager